UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT RIVERNIDER                          :
                                           :    Civil No. 3:14CV1000 (RNC)
              v.                           :
                                           :
UNITED STATES OF AMERICA                   :    February 13, 2026

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION PURSUANT TO
FED.R.CIV.P. 60(d)(3) TO VACATE THE 2255 JUDGMENT AND REOPEN HIS 2255
ACTION [DOC. # 274]

The defendant, *pro se*, has now filed a motion, Doc. # 274, to vacate the judgment entered

years ago in this civil action brought pursuant to 28 U.S.C. Section 2255 ("2255 Action") and to

reopen this extensively litigated, but now long-closed, matter based on his unfounded allegation

of fraud on this Court regarding a separate limited issue regarding restitution. It appears the

defendant hopes to ultimately upset the thirteen-year-old judgment in his federal criminal case

(3:10CR222 (RNC)) ["10CR222" Doc. 583] and thereby undo his separate recent incarceration in

Florida for violating multiple conditions of supervised release. This motion is a blatantly

transparent effort to circumvent the successive habeas petition requirement, given this Court's

prior denial of his 2255 Action; this Court's finding that no certificate of appealability would issue

[2255 Action Doc. 259]; and the Second Circuit's Mandate, dismissing the defendant's appeal of

that ruling [*id.* Doc. 269]. Illustrative of the baselessness of the defendant's present motion is its

timing, coming on the heels of developments in the Middle District of Florida, where he was

relatively recently reincarcerated after years out on supervised release.

As the Court is aware, the defendant was released early from prison in May 2020 [10CR222

Doc. 785,787], years before the scheduled release date, because of concerns raised by the

pandemic. He began a term of supervised release at that point and remained out on supervision,

1

with his criminal case in Connecticut transferred to the Middle District of Florda (5:24CR138 (TPD)-PRL-1) ("24CR138") in December 2024 [10CR222 Doc. 864]. The defendant had long lived in Florida and the Probation Office there was responsible for his supervision. In or about June 2025, the defendant was arrested based on a petition alleging the defendant violated terms of his supervised release [24CR138 Doc 17]. The defendant was detained and relatively recently, on December 12, 2025, the district court found him in violation of supervised release and sentenced him to an additional three years incarceration [*id.* Doc. 115]. The defendant is presently appealing that decision [24CR138 Doc. 119].

Faced with his pending appeal in Florida regarding his present incarceration, the defendant now plainly feels it is strategic to continue his collateral attack on the original criminal judgment by trying to use Fed.R.Civ.P. 60(d) to reopen the long-decided 2255 Action, an action which necessarily focused on narrow questions of constitutional import relating to his conviction, period of incarceration and supervised release. This strategic gambit should be promptly rejected. The defendant's present motion to vacate is baseless and provides no ground to reopen the decided habeas action. Under well-established application of Rule 60(d), the motion is plainly foreclosed for important policy reasons involving finality, the need to avoid the ceaseless relitigation of considered matters, and the specific proof requirements of Rule 60(d), which he in no way meets.

**Procedural Background**

**The Original Criminal Case in Connecticut, 3:10CR222 (RNC)**

As the Court is very well aware, the defendant pled guilty in the original criminal case in Connecticut (10CR222 (RNC)) in February 2013 [10CR222 Doc. 367] with sentencing and judgment entered in December 2013 [10CR222 Doc. 577, 583] to a term of incarceration of 144 months with 5 years of subsequent supervised release [10CR222  Doc. 583]. The defendant's

conviction was affirmed on appeal. *United States v. Rivernider*, 828 F.3d 91 (2d Cir. 2016). Despite the defendant having served just a little more than half of his sentence, the defendant applied for compassionate release at the outset of the pandemic, was granted relief and ordered released on or about May 12, 2020, more than five and a half years ago [10CR222 Doc. 785, 787]. While the defendant had certain ongoing issues on supervised release while the case remained in Connecticut, which resulted in a revocation hearing on those issues on August 1, 2023 [3:10CR222], the defendant was not reincarcerated in Connecticut at that time.

**The Original Criminal Case (cont.): Transfer to the Middle District of Florida**

In 2024, this Court signed a Transfer of Jurisdiction form filed with the Middle District of Florida [24CR138 Doc. 1], reflecting in Part 1 this Court's order transferring the Connecticut criminal case to Florida. *Id.* The Transfer of Jurisdiction Order gave the Justification/Reason for Transfer as "Mr. Rivernider has established himself in the Middle District of Florida. He has no ties to Connecticut and no plans of returning to Connecticut." (In fact, it is the undersigned's understanding that at all relevant times Mr. Rivernider lived in Florida and never lived in Connecticut; Connecticut was where a co-defendant and one or more victims resided.) The assigned district judge in the Middle District of Florida signed Part 2 of the Transfer of Jurisdiction document accepting jurisdiction on December 9, 2024, ordering that "jurisdiction over the above-named probationer/supervised releasee be accepted by this Court [in Florida] from and after then entry of this order," which order was subsequently received by the Clerk's Office in Connecticut and entered on the docket of the criminal case in Connecticut on December 11, 2024, again more than a year ago [10CR222  Doc. 864].

Since the Florida court assumed jurisdiction over the defendant's criminal case in December 2024, the docket for the case 24CR138 reflects 127 entries as of January 7, 2026,

reflecting that the relevant magistrate and district court have been fully engaged in the case, addressing various writs, petitions, motions, emergency motions, detention hearings, and violation hearings. *See, e.g,* 24CR138 Docket Sheet. As noted above, it appears that the defendant was arrested in Florida for violations of supervised release on June 25, 2025 [24CR138 Doc. 17] and detained [*id.* Doc. 20], and has remained in custody since that date.

On August 29, 2025, in opposing the defendant's appeal of the magistrate's order detaining him, the government in the Middle District of Florida outlined salient facts supporting the defendant's detention, apparently including that the defendant on December 30, 2024 represented to a lender to finance and purchase a vehicle that he had $14,000 monthly income as CEO of "Cut Above Ventures" and had held that position of 18 years, *id.* Doc. 78 at 5 n.1, a position contradicted by his financial affidavit in support of representation by the Federal Defender. *Id.* at 7. The defendant had also refused to pay restitution while nonetheless purchasing two new vehicles without obtaining approval of the Middle District probation office, and he refused to provide Probation in Florida with copies of his bank statements. *Id.* at 6. The defendant also apparently had a relatively recent history in Florida of committing new state law felonies of forgery, uttering a forged public record and voter fraud, with the finding of a state court guilty verdict on December 5, 2023. *Id.* at 7.

As is consistent with the defendant's strategic pattern of litigation, the defendant has in Florida before the district court there unsuccessfully and repeatedly accused the Florida Probation Officer of fraud. On August 26, 2025, defendant alleged misconduct and fraud based on the allegations made by the Officer in support of the arrest warrant for violation of supervised release; the defendant also moved in the criminal case under Fed. R. Civ. P. 60(b) to vacate the arrest warrant and to permit the defendant to withdraw his guilty pleas that he had entered in the original

criminal case in Connecticut [*Id.* Doc. 64 at 3]. The District Court denied the defendant's Rule 60(b) motions, without requiring government response [*Id.* Doc. 82].

In August 26, 2025, the magistrate in Florida conducted a preliminary hearing regarding an added violation of supervised release for which the relevant Probation Officer appears to have been the sole witness, and the court found probable cause that the defendant had committed the violation [*id.* Docs. 68, 75]. That testimony of the Probation Officer resulted on September 3, 2025, with the defendant filing an allegation of fraud on the court, calling for an "immediate investigation into misconduct by United States Probation Officer *****, whose sworn testimony and affidavit appear to constitute a fraud on the court and perjury. . . " [*id.* Doc. 86 at 1, 4]. The appeal of the magistrate's detention order was summarily denied by the District Court, Doc. 91, with the instruction that "[a]ny future 'appeals' filed by Defendant of the detention order may be summarily denied."

By September 10, 2025, the District Court endorsed an order that:

In light of the prolific and voluminous filing of motions, appeals and other documents by Defendant Robert Rivernider, the Government's obligation to respond to pending motions and appeals is suspended. Should a response be appropriate, the Court will direct the Government to file a response. The Court reminds the Defendant that the pendency of motions or other matters may provide reason to reschedule the final revocation hearing if the Court needs additional time to resolve any pending motions or matters. He therefore may want to carefully consider whether filing a motion, appeal, or documents is necessary or helpful to his case.

[24CR138 Doc. 93]. Ultimately, the final revocation hearing was held on December 12, 2025, with judgment entered on that date of three years imprisonment with no supervision to follow [*id.* Docs. 114 & 115]. As of December 12, 2025, the defendant has appealed that judgment [*id.* Doc. 119].

**The Long-Decided 18 U.S.C. Section 2255 Case**

The defendant initiated his Section 2255 Action more than 11 years ago, in July 2014 [3:14CV1000 ("14CV1000") Doc. 1]. As the Court lived this case, it does not bear repeating the extensive process afforded the defendant over the years during which the defendant pursued the matter. After years of litigation, myriad motions, and extensive evidentiary hearings, including hearings on January 16, January 17, February 13 and March 21, 2018, and extensive additional briefing, the Court dismissed the 2255 Action in September 2022, with no certificate of appealability [14CV1000 Doc. 259]. Defendant appealed and that appeal was dismissed, with the Mandate issuing in September 2023 [*id.* Doc. 269].

The procedural history, involving guilty pleas to 18 counts, a *Fatico* hearing, a sentencing and direct appeal all before the full litigation of the 2255 Action, alone created a number of legal bars to the continuation of the  2255 Action, before the Government made any additional arguments. *See* Gov. 2255 Resp. 14CV1000 Doc. 126 at 32-39 (discussing the multiple procedural bar rules against further litigation); *see generally* Gov. Resp. 14CV1000 Doc. 256 at 6-7 (discussing various bars). In fact, given the available procedural bars, the Government relied on those bars to limit the scope of the 2255 Action. *See, e.g.*, Gov. 2255 Resp. 14CV1000 Doc. 126 at 70-71.

As a direct result, the focus of the 2255 Action became primarily claims regarding constitutional ineffectiveness of defense counsel regarding the guilty pleas, including the multiple fact hearings noted above,[1] and scattershot claims regarding defense counsel's ineffectiveness at

---

[1] These multiple hearings were pursued despite that the plea petition included a detailed written admission of the defendant's guilt, entered at the time of the pleas, which the defendant later reconfirmed at various times, including admissions made to the Probation Office in Connecticut. PSR ¶ 80 [10CR222 Doc. 468] ("During the interview, he admitted committing the offenses of conviction, that being Conspiracy to Commit Wire Fraud and Wire Fraud. Moreover, he deferred to his Admission of Offense Conduct that is attached to his Petition to Enter a Guilty Plea

sentencing. Gov. Resp. 10CR222 Doc. 126 at 36-39; *see generally* Gov. Resp. 10CR222 Doc. 222. As to these challenges, the defendant's former defense counsel rebutted the defendant's claims through detailed testimony and through very detailed sworn affidavits proffered by defense counsel explaining strategic decisions for both the guilty pleas and for steps taken to get the defendant a sentence far below the applicable guidelines range. 14CV1000 Doc. 123 (Bergenn Affidavits); *Id.* 124 & 144 (Chase Affidavits); and 143 (Howard Affidavit) .

### **The Defendant's Current Allegation of the Fraud on the Court in 2255 Action**

In an effort to reopen his 2255 Action, the defendant now makes a limited restitution-based argument [14CV1000 Doc. 274] that "[d]uring the adjudication of the Petitioner's prior § 2255 motion, the Government represented" that "Selene Finance was a statutory victim of Petitioner's Offenses" and that "Selene Finance sustained $285,823.50 in actual loss." *Id.* at 3.  The defendant further asserts that those statements were materially false because: "the Mandatory Victim Restitution Act" states that "victim" means a person directly and proximately harmed by the offense of conviction under 18 U.S.C. Section 3663A.  *Id.* at 4. The defendant contends that Selene Finance did not originate the mortgage, was not a downstream lender, and did not rely on Petitioner's conduct at the time of the offense.  *Id.* at 4.  Rather, the defendant argues Selene Finance acquired its interest years later by purchasing a distressed asset at a discounted market price more than $100,000 less than $285,823 loss figure and thus suffered no direct and proximate loss under the restitution statute.  *Id.* at 4. The defendant goes on to argue that this was a material misrepresentation intentionally done by federal prosecutors and probation personnel.  *Id.* at 6.

---

(Doc.366-1) as a more specific statement of the offense.  In addition, Mr. Rivernider expressed remorse for his conduct and an appreciation for the severe impact on the numerous victims of the offense.").

As a threshold matter, as the Government had previously noted in the 2255 Action, restitution-related issues "do not implicate the Court's subject matter jurisdiction and thus are not a basis for 2255 relief under the facts here." 14CV1000 Doc 244 at 2 n2. (*citing*, *e.g., United States v. Rutigliano*, 887 F.3d 98,104-105 (2d Cir. 2018); *McEwan v. United States*, 279 F.Supp. 2d 462, 464 (S.D.N.Y. 2003). This Court agreed with that assessment in ultimately ruling on the 2255 Action. *See* Ruling & Order 14CV1000 Doc. 259 at 29 ("Rivernider's challenge to the restitution part of his sentence is not cognizable here," explaining that restitution does not impinge on custody requirement of § 2255). In fact, the 2255 Action itself spent little time on restitution issues given the various procedural bars regarding relitigating matters, with time instead spent litigating the ineffective assistance claims lodged against prior defense counsel. It is thus not surprising that the undersigned could find no reference to Selene Finance in the body of any filed pleading in the 2255 Action.

Even in the underlying criminal case, 3:10CR222 (RNC), when the parties addressed issues regarding restitution, there was no discussion of Selene Finance in the body of any filed pleading that the undersigned could identify. With the relevant FBI agents and lead counsel long retired, the undersigned has reacquainted himself with the exhibits submitted with filed pleadings, including Excel schedules reflecting relevant information. Of the approximate 104 properties as issue in the mortgage fraud scheme, an initial schedule attached to a filed restitution pleading reflected a $320,990 mortgage extended by Aurora Loan Servicing relating to an address at 15201 Glenmoor Drive, West Palm, Florida with Donna Moore as the borrower; a $35,000 foreclosure amount for the property; and an estimated loss of $285,823.50 [10CR222 Doc. 619-7 at 3] after giving credit for value of property. An updated schedule in the same submission, listed the same address with the lender incurring loss as Selene Finance; a foreclosure judgment against the

borrower of $399,753 and a foreclosure sale date of December 2011; a foreclosure amount for the property of $35,000; and a loss amount to lender of $285,823.50 with the listed lender incurring loss as Selene Finance [10CR222 Doc. 619-3 at 19]. In other words, the loss figure was identified in the paperwork as associated with Aurora Loan Servicing and Selene Finance, and ultimately attributed to the latter.

As these attribution determinations were made twelve years ago and further information is not needed to resolve the defendant's present motion for the reasons discussed below, the undersigned has not revisited the exact attribution undertaken by a careful FBI agent at the time. It should also be noted that, if Selene Finance was the downstream purchaser, it was an appropriate candidate for loss attribution given that the overstated borrower income and other fraud involving these mortgage applications would not have been publicly aired until at least the conviction and sentencing in this matter in late 2013 and any repayment on the note would be unlikely.[2] And a downstream purchaser of loans is entitled to restitution, despite the defendant's flat statement to the contrary, *see United States v. Yeung*, 672 F.3d 594, 603 (9th Cir. 2012) (downstream purchaser of loans was a restitution victim where fraud had not come to light). Here any restitution award could also have been significantly larger had it sought all recoverable expenses such as pre-judgment interest and interest due on the loan, among other recoverable expenses. *Id.* at 601. At most, it appears that defendant's blank assertions, even if taken as true, would not change the aggregate restitution figure relating to the address (unless the restitution figure was potentially *augmented* with additional reimbursable expenses), even if the original lender might also have

---

[2] In fact, as the Court may recall, as to many of the relevant borrowers in this matter, particularly those whose properties that had gone to foreclosure, their financial circumstances were bleak, which is why they had reached out to the defendant in the first place, attracted to his No More Bills Ponzi scheme. Many of these borrowers ultimately loss additional monies to the defendant as a result of the Ponzi scheme (and are thus included in the restitution order) and would have been in no position to make regular payments on unsecured mortgage notes.

been included as a restitution victim. Further, at this point, twelve years after the matter was decided and almost 20 years after the mortgage was initially extended, there are significant policy reasons for finality for previously litigated matters, not to mention that the defendant has apparently only paid, according to recent inquiries of our Financial Litigation Unit, $6,300 toward the current restitution obligation of approximately $22.5 million.[3] Again, ultimately, for the reasons discussed below, these issues are irrelevant to deciding the pending motion to vacate the judgment in the 2255 Action.

## Legal Background and Argument

As the Court is fully aware, because of important interests in finality and avoiding never-ending relitigation in criminal cases, the federal courts have created a number of important procedural waivers and litigation bars in 2255 actions to appropriately manage litigation, promote finality and limit vexatious and frivolous litigation, including bars created by valid guilty pleas, by procedural defaults, and by the entry of the mandate after appeal *See* 14CV1000 Doc. 126 at 32-39 (discussing legal bars with cases cited). An action pursuant to 28 U.S.C. Section 2255 itself involves significant expenditure of systemic resources to evaluate a defendant's accusations of ineffectiveness of defense counsel, as well as purported other missteps by the government. Thus dismissal of the 2255 action without a certificate of appealability creates its own additional significant procedural hurdles against relitigation, narrowly limiting any successive action only after certification by the appropriate court of appeals on extremely limited grounds.

---

[3] In this context, it is also worth noting that, throughout, the Government's restitution order has remained relatively conservative for a range of reasons. The proposed restitution losses did not include five loans where losses might have been as much as $1.225 million if the loans had defaulted, but there the borrowers had continued to make payments. *Id.* 10CR222 Doc. 619 at 5. There were an additional five loans with losses of approximately $1.042 where the entity extending the loan was defunct and the agents couldn't identify a successor entity. *Id.*

It is against this background that this Court evaluates the application of Fed.R.Civ.P. 60(d) in 2255 actions. While Fed.R.Civ.P. 60(d) explains that "[t]his rule does not limit a court's power to: . . . . (3) set aside a judgment for fraud on the court,"  the courts have limited its application to a narrow set of circumstances not applicable here.

A. **Rule 60 Is Not to be Used as an End-Around Successive Habeas Restrictions.**

The purpose of Rule 60(d) is very narrow, and does not permit general attacks focusing on the underlying criminal action; it is narrowly focused on the integrity of the specific habeas action itself, which deals with issues of conviction, imprisonment and length of supervised release.  *See United States v. Pena*, 859 F.Supp.2d 693, 696 (S.D.N.Y. 2012) (Rule 60(d)(3) unavailable to attack underlying conviction); *Espinal v. United States*, 2012 WL372014 at *1 (E.D.N.Y. Feb. 3, 2012) (same). By way of example, Rule 60(d)(3) is not available where a defendant's claims are truly focused on particular disputes central to the underlying criminal action, in contrast to purported improper conduct against the court in the civil habeas proceedings. *Espinal, id.* A petitioner may not invoke Rule 60 in "a transparent attempt to circumvent the procedural obstacle that bar[ ] his Section 2255 motion." *Ortiz v. New York*, 75 F.Appx. 14 (2d Cir. 2003); *Gonzalez v. Crosby*, 545 U.S. 524,531 (2005); *Millan v. United States*, 2011 WL 5169443 *3 (S.D.N.Y. Oct. 31, 2011).  "If the motion attacks the underlying conviction, the Court can either treat it as a second or successive habeas petition and transfer it to the Second Circuit or the court may simply deny the portion of the motion attacking the underlying conviction as beyond the scope of Rule 60. *See Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004) ("[R]elief under Rule 60(b) is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the previous habeas proceeding and not the underlying criminal conviction"); *Espinal*, 2012WL37014 at *1; *see also Pena*, 859 F. Supp. at 697 (citing cases where a Rule 60(b) motion

is not permitted as a disguised successive habeas petition for relief); *United States v. Goodin*, 2025 WL 1792850 * 2-3 (W.D. La. June 27, 2005) (treating a Rule 60(d) claim as a successive habeas).

By way of example, in *United States v. Kirtman*, 836 Fed. Appx. 700, 705 (10th Cir. 2020), a petitioner took issue with his sentence and alleged fraudulent factual findings in the PSR that the district court was alleged to have been deceived into accepting. *Id.* After multiple successive habeas petitions, the defendant brought a Rule 60(d)(3) motion which reasserted claims regarding the underlying conviction and sentence. The 10th Circuit treated this effort as an end-around his failed prior Section 2255 actions, noting that the motion was a successive 2255 petition that the district court did not have jurisdiction to address, and treated the appeal as a request for certificate of appealability and denied the request. *Id.* at 706 (the "bar against successive Section 2255 petitions may not be avoided 'by simply styling a petition under a different name'") (citations omitted).

Here the defendant has taken issue with a relatively small aspect of the current $22 million restitution order litigated in the criminal action, namely, whether Selene Finance is entitled to restitution monies associated with a certain mortgage loan. As noted above, Selene Finance was a relatively small lender included on several lines in detailed restitution spreadsheets involving the No More Bills Ponzi scheme and associated mortgage fraud scheme. But defendant's intent is obvious to use the allegation as a toehold to use Rule 60(d) to attack the criminal judgment and as an end-around the bar against successive petitions. This he cannot do. *See United States v. Pena*, 859 F.Supp.2d 693, 696 (S.D.N.Y. 2012) (noting improper use of Rule 60(d) as successive habeas); *Espinal v. United States*, 2012 WL372014 at *1 (E.D.N.Y. Feb. 3, 2012) (same). This effort is particularly egregious here given that issues of restitution are not the purpose of a 2255 Action, which focuses on custody related issues. *See United States v. Rutigliano*, 887 F.3d at 104-

105 (2d Cir. 2018); *McEwan v. United States*, 279 F. Supp. 2d at  464 (S.D.N.Y. 2003). The defendant cannot avoid the requirements for successive habeas motions by restyling the motion as a Rule 60(d) motion. *United States v. Kirtman*, 836 Fed. Appx. at 705 (10th Cir. 2020) (the "bar against successive Section 2255 petitions may not be avoided 'by simply styling a petition under a different name'"); *see also cases cited supra* at 10-11.

In short, "[i]f the motion attacks the underlying conviction, the Court can either treat it as a second or successive habeas petition and transfer it to the Second Circuit or the court may simply deny the portion of the motion attacking the underlying conviction as beyond the scope of Rule 60. *Id*.  The court can either transfer the motion to the Second Circuit or simply deny it as beyond the scope or Rule 60.[4]

---

[4] In defining the Rule 60 "fraud on the court" standard more generally, this Circuit noted in *Mazzei v. The Money Store*, 62 F.4th 88, 93 (2d Cir. 2023) that "courts are not prevented from impartially and fairly adjudicating a case where the plaintiff has an adequate opportunity to redress the alleged fraud in the prior action." *Id*.  While the *Mazzei* case more generally involved a Rule 60(b) claim, the *Mazzei* court referenced both Rule 60(b) and (d), *id.* at 93, and more broadly noted:

> [W]e have consistently held that courts are not prevented from impartially and fairly adjudicating a case where the plaintiff had an adequate opportunity to redress the alleged fraud in the prior action. *See Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988) (dismissing claim where plaintiff "had ample opportunity in the prior proceeding to uncover the alleged fraud"); *Serzyesko* [*v. Chase Manhattan Bank*, 461 F.2d 699, 702 (1972)] at n2, (observing that "[t]he test suggested . . . seems to be whether there was an opportunity to have the ground now relied upon to set aside the judgement fully litigated in the original action.") . . . .

*Id.* at 93-94. To the extent a criminal defendant had an adequate opportunity to redress the alleged fraud before, Rule 60 is simply not available for redress. This discussion simply reaffirms that Rule 60 should not be used to relitgate issues. Here where the subject matter of the restitution litigation in the criminal case encompassed lender losses with methodology of loss calculation plainly presented, there is no basis to use Rule 60(d) to reopen the 2255 Action.

B.  **The Defendant Does Not Come Close to Meeting
Rule 60(d)'s Very High Bar to Vacate a Judgment.**

As noted in the Rule itself, a motion under Rule 60(b)(3) to set aside a judgment for "fraud"

must be brought no more than one year after the judgment, Rule 60(c), which plainly was not done

here. Instead, a defendant's motion under Rule 60 for "fraud on the court" permits greater timing

latitude, but as a result sets a considerably higher bar to establish "fraud on the court" under the

Rule. *Kupferman v. Consol. Research & Mfr. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (noting

the high bar for allegations of "fraud on the court" particularly in light of (b)(3) time limits on

more pedestrian fraud). Thus, Rule 60(d)(3) is available only when the fraud "seriously affect[ed]

the integrity of the normal process of adjudication." *Giurca v. Montefiore Health System Inc.*, 2025

WL 2658786 at *2  (2d Cir. Sept. 17, 2025); *see also King v. First Am. Investigations, Inc.,* 287 F.

3d 91, 95 (2d Cir.), *cert denied*, 537 U.S. 960 (2002) (discussing "fraud on the court"); *Martina*

*Theatre Corporation v. Schine Chain Theaters, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960). As the

*Giurca* court emphasized: "Fraud upon the court" "embraces only that species of fraud which

does[,] or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so

that the judicial machinery cannot perform in the usual manner its impartial task of adjudging

cases." *Giurca, supra* at *2 (citing cases); *Kupferman*, 459 F.2d at 1078.

The movant must  prove "**by clear and convincing evidence**"; **"**that the [other party]

interfered with the judicial system's ability to adjudicate impartially"; "and that the acts of the

defendant [were] of such a nature as to have prevented the [movant] from fully and fairly

presenting a case or defense."  *Giurca* at *2 (emphasis added); *King*, 287 F.3d at 95 (fraud upon

the court "must be established by clear and convincing evidence"); *Anderson v. New York*, 2012

WL 4513410 (S.D.N.Y Oct. 2, 2012 (denying Rule 60(d) motion for lack of evidence, among other

grounds). Because of the rarified nature of actionable fraud, allegations that opposing counsel

mischaracterized the applicable law or the evidence submitted to the court "does not rise to the

level of fraud on the court." *Weldon*, 225 F.3d 647, 2000WL 1134358 at \*2; *see also in re Old

Carco LLC*, 423 B.R. 40, 53 (S.D.N.Y. 2010) (same).  The heightened level of fraud is described

as a "deliberately planned and carefully executed scheme."  *Giurca*, at \*2. And the fraud on the

court must have  influenced the court in rendering its judgment. *See Hazel-Atlas Glass Co. v.

Hartford-Empire Co.*, 322 U.S. 238 at 246-47 (1944), *overruled on other grounds by Standard Oil

Co. of Cal.    v. United States*, 429 U.S. 17 (1976).  As noted in *Giurca* and cases cited therein,

the defendant must show that the actions of the government must have prevented the defendant

from "fully and fairly presenting a case or defense." *Giurca, supra*, at \*2; *Marco Destin, Inc. v.

Levy*, 690 F.Supp.3d 182, 191 (S.D.N.Y. 2023); *Hall v. Le Claire*,  2025 WL 2237902 \* 2-3

(S.D.N.Y. Aug. 6, 2025)    (denying motion to vacate for insufficient evidence, requiring

interference with the judicial system's ability to adjudicate impartially and the acts must have

prevented full and fair presentation of defense).

    Here there is plainly no evidence that Government counsel or Probation engaged in a

deliberate effort to defraud the Court in this 2255 Action regarding the Selene Finance restitution

issue.[5] To the undersigned's knowledge, the Government neither in briefing nor in oral argument

mentioned Selene Finance in the 2255 Action.[6] It is hard to defraud without raising the issue in

any meaningful manner. As restitution was not the subject of the 2255 Action, which addresses

issues of the underlying conviction, imprisonment and the period of supervised release, *see*

---

[5]  It would also seem that Probation or other government personnel would not fall under the rubric
of "officers of the court" and thus not fall under the scope of Rule 60(d).  This is noted as it simply
reflects the unsupported scattershot approach taking by the defendant with his allegations of fraud
against a range of government personnel. Def. Motion at 6.

[6]  To the extent that a restitution order was included as an exhibit during the years of litigation in
the 2255 Action, the entity would have been listed, but the undersigned does not recall any
argument regarding the entity in the 2255 Action.

*Rutigliano*, 887 F.3d at 104-105; *McEwan,* 279 F. Supp. 2d at  464, it would make no sense to try to deceive regarding this issue, if one were inclined to do so. Nor would it make sense to defraud where it appears that the restitution amount would not change if the defendant were correct, as discussed above, other than adding another victim. And further it would make no sense given that, with the defendant's financial circumstances, payment of more than nominal restitution has always been unlikely. In a similar vein, deception makes no sense in the 2255 Action where most issues directed at the Government were otherwise procedurally barred in the 2255 Action.

In fact, what *does* make sense is that the defendant is simply throwing out the allegation as an unfounded strategic play. And, as this Court is acutely aware, the litigation record of this defendant for over a decade has been to claim that others – Probation, former defense counsel, the Government, and the Court – have engaged in fraud regarding every aspect of litigation in this case, undercutting any weight to give the claim.

Further, Rule 60(d) places an extremely high evidentiary burden of requiring fraud proved to be by clear and convincing evidence. *See  supra* at 14. For the same reasons noted above, there is no evidence, much less clear and convincing evidence, of fraud on the court as to the alleged restitution issue. The defendant has not and cannot meet that bar and thus his motion should be dismissed.

In addition, where the purported "fraud on the court" involved a limited issue of restitution, an issue not appropriate for 2255 action consideration, it is hard to understand how the alleged fraud would have influenced the Court in rendering its judgment in the 2255 Action, a finding required under Rule 60(d); the 2255 Action was instead focused on custody issues surrounding conviction, imprisonment and length of supervised release, not restitution. *See Rutigliano*, 887 F.3d at 104-105 (noting that restitution relief not basis of 2255 action); *McEwan v. United States*,

279 F. Supp. 2d at 464 (same). As the Court noted in deciding the 2255 Action, "Rivernider's challenge to the restitution part of his sentence is not cognizable here." *See* 14CV1000 Doc. 259 at 29. For this separate reason, the defendant's Rule 60(d) motion to vacate the judgment should be denied.

Finally, it is worth repeating that the defendant's present motion to vacate the judgment in the 2255 Action is nothing more than a transparent, albeit baseless, effort to undercut the underpinnings for his recent incarceration in Florida for violations of supervised release.

## Conclusion

For all the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion to vacate the long-entered judgment in the 2255 Action.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct14806
christopher.schmeisser@usdoj.gov
157 Church Street, 25TH Floor
New Haven, CT  06510
Tel.: (203) 821-3700

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 13, 2026, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

In particular, a copy of this motion has been mailed to:

Robert Henry Rivernider, Jr. (ID# 25041136)
Orange County Corrections Department
3723 Vision Blvd.
Orlando, FL 32839


<u>/s/Christopher W. Schmeisser</u>
Christopher W. Schmeisser
Assistant United States Attorney